IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANGELLO A. D. OSBORNE, | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. RDB-14-182 |
| | * |
| CORPORAL PETER GEORGIADES, | |
| LGSW DIONE WHITE, and | * |
| MEREDITH LYNN PIPITONE,[1] | * |
| | * |
| Defendants. | * |

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

This case arises out of the investigation, arrest, and subsequent imprisonment of

Plaintiff Angello Osborne ("Plaintiff" or "Osborne") for alleged sexual assault of a minor

child. Plaintiff originally filed this action against Defendant Corporal Peter Georgiades

("Corporal Georgiades"), LGSW[2] Dione White ("White"), and Meredith Lynn Pipitone

("Pipitone"), claiming violations of his constitutional rights under 42 U.S.C. § 1983 and 42

U.S.C. § 1985. On January 20, 2015, this Court dismissed the 42 U.S.C. § 1985 claim as to

Corporal Georgiades, but allowed Plaintiff's claim under 42 U.S.C. § 1983 as to Corporal

Georgiades to proceed to discovery. Mem. Op., ECF No. 20; Order, ECF No. 21. In the

same order, this Court also dismissed all counts against Defendant White. *Id.* On June 4,

---

[1] Defendants LGSW Dione White and Meredith Lynn Pipitone were previously dismissed from this action on January 20, 2015 and June 4, 2015, respectively. The Clerk of the Court is thus directed to re-caption this case to reflect the presence of the sole defendant, Corporal Peter Georgiades.

[2] Osborne named Defendant Dione White as "LGSW Dione White." Maryland issues four social worker licenses, including the "Licensed Graduate Social Work," or LGSW certification. Md. Code Ann., Health Occupations, § 19-101(h).

2015, this Court granted Pipitone's Motion for Judgment on the Pleadings (ECF No. 26) and dismissed her from this case. Mem. Op., ECF No. 37; Order, ECF No. 38.

Currently pending before this Court is Defendant Corporal Georgiades's Motion for Summary Judgment (ECF No. 42). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Corporal Georgiades's Motion for Summary Judgment (ECF No. 42) is DENIED. As genuine issues of material fact remain, the Defendant is not entitled to qualified immunity as a matter of law. Accordingly, this case will proceed to trial on the sole remaining claim that Corporal Georgiades, acting under color of law, violated Osborne's Fourth and Fourteenth Amendment rights. The trial will begin on January 11, 2015.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Osborne and Pipitone are the parents of two minor children—a daughter ("JMLO"), aged five years at the time of the events in question, and a son ("CJP"), aged two years. Def.'s Mot. for Summ. J. Ex. 1, 3, ECF No. 42-3 (Children & Family Services Intake Worksheet). On November 1, 2010, Pipitone contacted the Harford County Child Advocacy Center to report the alleged sexual assault of JMLO. *See id.* Pipitone claimed that JMLO did not want to spend Halloween with her father, with whom JMLO allegedly "d[id] not have a good relationship." *Id.* JMLO purportedly told Pipitone that, several weeks prior, Osborne had "put his penis on her vagina" when she was asleep. *Id.*

The same day, White, a licensed social worker for the Harford County Child Advocacy Center, interviewed Pipitone.[3] Pipitone allegedly acted "in a manner that would cause [Corporal Georgiades and White] to be sympathetic to her and biased against" Plaintiff. Compl. ¶ 9, ECF No. 1. Following the meeting with Pipitone, White questioned JMLO regarding her mother's statements. Corporal Georgiades was not present, instead observing the interview from an adjoining room via a live video feed. White Dep. 29:9-20, ECF No. 42-5. Corporal Georgiades observed the interview for purposes of investigating the allegations. Pl.'s Resp. in Opp'n Ex. 3, 4:2-6, 6:24-7:4 (Circuit Court for Harford County, Maryland Motions Hearing Tr., June 21, 2011). Throughout the interview, Corporal Georgiades remained in telephone contact with White. Pl.'s Resp. in Opp'n Ex. 2, 32:11-33:12 (Circuit Court for Harford County, Maryland Motions Hearing Tr., June 20, 2011).[4] Corporal Georgiades and White spoke at least three times, *see id.* 32:9-33:25, but White stated that she did not recall the content of their conversations. Pl.'s Resp. in Opp'n Ex. 3, 29:13-20.

White employed the "Rapport, Anatomical Identification, Touch Inquiry, Abuse Scenario, Closure ("RATAC") method when questioning JMLO. White Dep. 24:21; 25:1-4. RATAC focuses on reducing any potential trauma to the child during the interview. Pl.'s Resp. in Opp'n Ex. 3, 12:5-8. In response to White's interrogation, JMLO consistently denied that Osborne, or anyone, had touched her on parts of her body covered by a bathing suit. *Id.* 15:1-15. JMLO also denied that anyone had asked or forced her "to touch their

---

[3] White could not recall if Defendant Corporal Georgiades was present during this interview, although she stated that, "if the officer is present, [he] would sit in on the pre-interview." White Dep. 22:16-17, ECF No. 42-5.

[4] Plaintiff filed the exhibits accompanying his Response in paper, thus they are not available electronically.

privates with their penis," *id.* 15:13-20; that she had told her mother that someone attempted to touch her, *id.* 17:5-7; and that she had told her mother that "somebody put their penis in your private," *id.* 17:16-20. In total, JMLO denied abuse six different times. *Id.* 17:21-18:3.

Despite the repeated refutations, JMLO then changed course, describing instances in which Osborne "took his pants off and he got his penis and put it on [her] vagina and then he pressed it really bad and then it hurt." Def.'s Mot. for Summ. J. Ex. 3, 12, ECF No. 42-6 (JMLO Interview). JMLO also stated that Osborne had used his foot in the same manner. Pl.'s Resp. in Opp'n Ex. 3, 29:6-8. After this statement, Corporal Georgiades and White terminated the interview. *Id.* 29:21-30:8. Osborne claims that White, with Corporal Georgiades's guidance, constructed questions "that were unduly suggestive and leading in nature[,] . . . designed and intended to cajole the minor child into making up a story to support" Pipitone's accusations. Compl. ¶ 13.

After White completed her examination of the minor child, Pipitone called Osborne to accuse him of sexually assaulting their daughter. *See* Pl.'s Resp. in Opp'n Ex. 5 (Osborne-Pipitone Telephone Tr.) With Pipitone's consent, Corporal Georgiades listened in on the call to Plaintiff. Compl. ¶ 15. During the telephone conversation, Osborne consistently denied Pipitone's accusations. *See* Pl.'s Resp. in Opp'n Ex. 5.

Dr. Paul Lomonico ("Dr. Lomonico") examined JMLO on November 3, 2010 for evidence of sexual assault. Def.'s Mot. for Summ. J. Ex. 4, ECF No. 42-7 (Report of Dr. Lomonico); *see also* Pl.'s Resp. in Opp'n Ex. 6 (Report of Dr. Lomonico). The alleged assault occurred on October 16, 2010. *See id.* Dr. Lomonico found no physical evidence of sexual abuse, but noted that his findings "do[] not rule out abuse." *Id.* In contrast, White concluded

that sexual abuse was "indicated." Def.'s Mot. for Summ. J. Ex. 5, 4, ECF No. 42-8 (Child Abuse Report).

On December 15, 2010, Corporal Georgiades met with Diane Tobin ("Tobin"), a Deputy State's Attorney for Harford County, Maryland. Tobin Aff., ECF No. 42-10. After reviewing the video of the JMLO interview, Tobin accepted the case for prosecution. *Id.* Corporal Georgiades attempted to contact Osborne, but was unsuccessful. Def.'s Mot. for Summ. J. Ex. 6, ECF No. 42-9 (Corporal Georgiades Supplemental Report). Corporal Georgiades then applied for an arrest warrant on January 24, 2011. Corporal Georgiades Dep. 60:7-12, ECF No. 42-11; Def.'s Mot. for Summ. J. Ex. 9, ECF No. 42-12 (Application for Statement of Charges). Corporal Georgiades's affidavit disclosed only JMLO's accusations of sexual abuse, and not her repeated refutations, nor the results of any medical examination. Def.'s Mot. for Summ. J. Ex. 9, at 3. An arrest warrant was issued and Plaintiff was arrested on the same day. Def.'s Mot. for Summ. J. Ex. 10, 4, ECF No. 42-13 (Arrest Warrant).

Osborne was charged with eight counts of sexual assault-based offenses. *See id.*, at 2-3 (Statement of Charges). On January 25, 2011, Osborne was detained in the Harford County Detention Center, with bail set for $500,000. Pl.'s Resp. in Opp'n Ex. 8 (Commitment Pending Hearing). A grand jury subsequently indicted Osborne on sixteen counts of sexual assault-related crimes. Def.'s Mot. for Summ. J. Ex. 11 (Commitment Pending Hearing, Indictment). Osborne was incarcerated without bond for over eight months, until October 3, 2011, after which date a bond was set for $25,000. Osborne Dep. 46:8-9, ECF No. 42-15. Finally, the Office of the State's Attorney for Harford County declined to prosecute

Osborne on December 13, 2011, instead placing his case on the inactive "stet" docket. Osborne Dep. 37:8-21.

Osborne subsequently initiated the present action against Defendants Pipitone, Corporal Georgiades, and White on January 23, 2014. In his Complaint, Osborne made two claims. First, he alleged that the Defendants, acting under color of state law, violated his Fourth Amendment and Fourteenth Amendment rights in contravention of 42 U.S.C. § 1983 (Count I). Compl. ¶¶ 27-30.   Second, Osborne asserted that Defendants conspired to construct false accusations of sexual assault against him, thereby denying him the equal protection of the laws under 42 U.S.C. § 1985(3) (Count II). *Id.* ¶¶ 31-35. Regarding both counts, Osborne argued that Pipitone, Corporal Georgiades, and White "knowingly and intentionally" induced the minor child to fabricate a story of sexual abuse that led directly to his "unjustifabl[e] arrest[] . . . [and] imprisonment." *Id.* Osborne denies ever assaulting or even attempting to assault the minor child. *Id.* ¶ 26. His arrest and ensuing incarceration thus were allegedly "without justification, without probable cause, and were motivated by [Defendants'] wanton, malicious[,] and reckless desire to inflict great emotional and physical distress and pain and suffering upon" Osborne. *Id.* ¶ 25.

After this Court dismissed all claims against White and Pipitone, Corporal Georgiades moved for summary judgment on the sole remaining 42 U.S.C. § 1983 claim (Count I). *See* Mot. for Summ. J., ECF No. 42. Corporal Georgiades contends that he is entitled to qualified immunity for his actions.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). In so doing, this Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

7

<u>ANALYSIS</u>

Qualified immunity affords government officers protection from suits for monetary damages when the officers have acted in good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This brand of immunity is "an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow*, 457 U.S. at 818. Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, law enforcement officers "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful will be entitled to immunity from suit." *Henry v. Purcell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied*, --- U.S. ----, 132 S. Ct. 781 (2011); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). Qualified immunity shields government officials from § 1983 claims unless two conditions are satisfied: first, the alleged facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right[;]" and second, "whether the right asserted was clearly established at the time of the events at issue." *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 626-27 (4th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001)); *accord Occupy Columbia*, 738 F.3d at 118.

Osborne contends that the facts described above, considered in the light most favorable to him, establish that he was falsely arrested and imprisoned for over eight months in violation of the Fourth Amendment of the United States Constitution, U.S. Const. amend. IV.[5] Section 1983 claims for false arrest or false imprisonment are "properly analyzed as unreasonable seizures under the Fourth Amendment." *McPhearson v. Anderson*, 873 F. Supp. 2d 753, 756 (E.D. Va. 2012) (quoting *Day v. Milam*, Civ. A. No. 1:11-cv-97, 2011 WL 5190809, at *4 (E.D. Va. Oct. 28, 2011)). If a plaintiff alleges that police officers seized him "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor," then he has sufficiently stated a claim for unreasonable seizure under the Fourth Amendment. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996); *see also Miller*, 475 F.3d at 630 ("Unquestionably, the Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual without probable cause is unreasonable.") (internal citation omitted).

In light of these principles, Osborne claims that his seizure was unreasonable because it resulted from Corporal Georgiades's fabrication of evidence and omission of material facts from the warrant application. The first alleged act—fabrication of evidence—is properly construed as "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000). The alleged "fabricated evidence" here is JMLO's description of sexual assault, produced by the

---

[5] The United States Court of Appeals for the Fourth Circuit has explained that § 1983 incorporates common law torts, such as false arrest and false imprisonment, so as to create a "'special species of tort liability,' founded on rights originating in the Constitution[.]" *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).

alleged active pressure of Corporal Georgiades. To demonstrate a constitutional violation, this Court must consider whether, in the light most favorable to Osborne, the facts show that Corporal Georgiades fabricated evidence and that the fabrication resulted in a deprivation of Osborne's liberty.

As described *supra*, the proffered evidence is that Corporal Georgiades was not in the room during White's interview of JMLO. In his investigating capacity, he observed the interview from a separate room via a live video feed and stayed in contact with White. He spoke to White before the interview, and on at least three occasions during the interview. White, however, did not recall the subject of their conversations. When JMLO stated that Osborne had used his foot to sexually abuse her, Corporal Georgiades ordered the conclusion of the interview.

Given JMLO's earlier denials of abuse and the results of her physical exam, a reasonable jury could certainly conclude that Corporal Georgiades exerted pressure that resulted in the fabrication of evidence against Plaintiff. As the contents of the conversations with White are not disclosed, a reasonable jury could conclude that Corporal Georgiades gave White questions designed to mislead and confuse JMLO. Indeed, during a motions hearing pertaining to Plaintiff's criminal charges, even the Harford County Circuit Court found it "hard . . . to believe" that White could not recall the contents of the conversations. Pl.'s Resp. in Opp'n Ex. 3, 29:14-20. Further, a reasonable jury could conclude that JMLO's account was fabricated when she described Osborne's alleged use of his foot. The allegedly fabricated evidence directly resulted in Osborne's unreasonable seizure, as Corporal Georgiades described JMLO's account of the abuse in the warrant application.

Moreover, this right to be free from deprivation of liberty due to an officer's fabrication of evidence is clearly established now and in 2010, when the alleged misconduct occurred. *See Washington*, 407 F.3d at 282-84 (recognizing this constitutional right); *accord Zahrey*, 221 F.3d at 355 (compiling cases); *see also Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986). Accordingly, Corporal Georgiades is not entitled to qualified immunity for allegedly fabricating evidence against the Plaintiff.

Turning next to the alleged omission of material facts from the warrant application, Osborne must show that Corporal Georgiades "deliberately or with a reckless disregard for the truth made material false statements in his affidavit, . . . or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller*, 475 F.3d at 627 (internal citations omitted). An officer acted with "reckless disregard" when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks omitted)). If, as in this case, an officer's omissions, and not false statements, are at issue, "'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'" *Miller*, 475 F.3d at 627 (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)). Further, the omissions (or false statements) must be "material," as in "necessary to the [neutral and disinterested magistrate's] finding of probable cause." *Miller*, 475 F.3d at 628 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Once again, a reasonable jury could conclude that the warrant application submitted by Corporal Georgiades contained omissions made deliberately or with reckless disregard for any misleading effect. The warrant application described only JMLO's eventual account of sexual abuse by the Plaintiff. Corporal Georgiades omitted any reference to her repeated denials or the dearth of any physical evidence of abuse. Admittedly, both White and Dr. Lomonico stated that such evidence does not prove conclusively that Osborne did not sexually assault JMLO. *See* White Dep. 36:9-16 (explaining that it is "very normal for children to initially deny abuse"); *see also* Def.'s Mot. for Summ. J. Ex. 4 (wherein Dr. Lomonico noted that his findings "do[] not rule out abuse.").

Yet, the presence of this contradictory evidence, which is directly relevant to the accusations of sexual abuse, could certainly negate a finding of probable cause. In determining probable cause, a neutral, reasonable judicial officer could choose to credit this evidence over the evidence of JMLO's account of abuse. As this evidence directly contradicts JMLO's account, its value to the Plaintiff and potential to negate probable cause are self-evident. Even if jurors ultimately find Plaintiff's evidence to be unconvincing, he has provided sufficient evidence to establish his Fourth Amendment right to be free from unreasonable seizure.

Moreover, Osborne's particular right—that an officer violates the Constitution by deliberately or "with reckless disregard for the truth" omitting material facts from a warrant application—was clearly established in 2010. In *Franks v. Delaware*, 438 U.S. at 155-56, the United States Supreme Court explicitly recognized this right under the Fourth Amendment. As the Fourth Circuit explained in *Miller v. Prince George's County, Maryland*, 475 F.3d at 631,

this right is universally accepted and enforced by the courts of appeals. *See also United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990); *Burke v. Town of Walpole*, 405 F.3d 66, 81-82 (1st Cir. 2005); *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003); *Olson v. Tyler*, 771 F.2d 281 (7th Cir. 1985)). Corporal Georgiades is thus not entitled to qualified immunity for his alleged material omissions.

In sum, genuine issues of material fact remain as to Plaintiff's alleged constitutional violations. The rights asserted by Plaintiff are not murky and unclear, but rather clearly established at the time of the alleged misconduct. Accordingly, Corporal Georgiades may not invoke the shield of qualified immunity.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Corporal Georgiades's Motion for Summary Judgment (ECF No. 42) is DENIED. As genuine issues of material fact remain, the Defendant is not entitled to qualified immunity as a matter of law. Accordingly, this case will proceed to trial on the sole remaining claim that Corporal Georgiades, acting under color of law, violated Osborne's Fourth and Fourteenth Amendment rights. The trial will begin on January 11, 2015.

A separate Order follows.

Dated: October 23, 2015                              _____/s/_____
                                                     Richard D. Bennett
                                                     United States District Judge