# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ANGELLO A.D. OSBORNE,     *

   Plaintiff,     *

v.     *     Civil Action No.: RDB-14-182

CORPORAL PETER GEORGIADES,     *

   Defendant.     *

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Angello Osborne ("plaintiff" or "Osborne") has filed this action against defendant Corporal Peter Georgiades ("defendant" or "Georgiades") pursuant to 42 U.S.C. § 1983 alleging civil rights violations during Georgiades' investigation and referral of charges against Osborne based on allegations that Osborne had sexually assaulted his five-year old daughter ("JMLO"). (ECF No. 1.) Specifically, Osborne alleges that he was arrested without probable cause as a result of certain material omissions by Georgiades in his January 2011 arrest warrant application. (*Id.*) While Osborne was held in pretrial custody for over eight months, the charges against him were ultimately placed on the 'stet' docket by the State's Attorney for Harford County, Maryland in December 2011.[1] (*Id.*)

---

[1] A "stet" under Maryland law is an indefinite postponement of a criminal charge. *See* Md. Rule Crim. Proc. 4-248 ("On motion of the State's Attorney, the court may indefinitely postpone trial of a charge by marking the charge "stet" on the docket. … A stetted charge may be rescheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown.").

This Court previously denied Georgiades' first Motion for Summary Judgment based on his assertion of qualified immunity from suit. (ECF Nos. 49, 50.) Following an affirmance of this Court's prior decision by the United States Court of Appeals for the Fourth Circuit, a trial was scheduled to begin in this Court on September 18, 2017. (ECF No. 64.)

Now pending before this Court is defendant Corporal Georgiades' Second Motion for Summary Judgment (ECF No. 71). The parties' submissions have been reviewed, and a hearing was conducted on September 6, 2017. For the reasons stated below, defendant Corporal Peter Georgiades's Motion for Summary Judgment (ECF No. 42) is GRANTED, and summary judgment shall be ENTERED in his favor.

## PROCEDURAL BACKGROUND

Osborne filed his Complaint in this Court on January 23, 2014 against defendant Corporal Peter Georgiades, social worker Dione White, and Meredith Lynn Pipitone, the mother of JMLO. (ECF No. 1.) Defendant Georgiades and former defendant White filed motions to dismiss, and by Memorandum Opinion and Order dated January 20, 2015, this Court dismissed plaintiff's claims against White, dismissed Osborne's § 1985 claim (Count II), but permitted Osborne to pursue his § 1983 claim (Count I) against defendant Georgiades. (ECF Nos. 19, 20.) By subsequent Memorandum Opinion and Order dated June 4, 2015, this Court granted former defendant Meredith Lynn Pipitone's motion for judgment on the pleadings, and dismissed her from this action. (ECF Nos. 37, 38.)

Following the close of discovery, defendant Georgiades filed his first Motion for Summary Judgment, asserting that he was entitled to qualified immunity from suit. (ECF

No. 42.)  By Memorandum Opinion and Order dated October 23, 2015, this Court denied Georgiades' motion and directed that this case should proceed to trial on the question of whether Georgiades, acting under color of law, violated Osborne's Fourth and Fourteenth Amendment rights.  (ECF Nos. 49, 50.)  Trial was scheduled to begin on January 11, 2016.  (*Id.*)

On November 18, 2015, Georgiades noted an appeal of this Court's Memorandum Opinion and Order denying his first Motion for Summary Judgment.  (ECF No. 51.)  This Court then entered an order staying the trial of this case pending Georgiades' appeal.  (ECF No. 55.)  By Opinion and Judgment dated Febraury 8, 2017, the United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment denying Georgiades' motion for summary judgment based on qualified immunity.  (ECF No. 60.)  *Osborne v. Georgiades*, 679 F. App'x 234, 236 (4th Cir. 2017).  The Fourth Circuit's Mandate took effect on March 2, 2017.  (ECF No. 62.)

A Revised Scheduling Order was issued on March 9, 2017, setting a three-day jury trial to begin on Monday, September 18, 2017.  (ECF No. 64.)  Georgiades filed his now-pending Second Motion for Summary Judgment (ECF No. 71) on July 28, 2017, and this Court conducted a hearing on Defendant's Motion on September 6, 2017.  (ECF No. 78.)

**FACTUAL BACKGROUND**

The pertinent factual background is set forth in this Court's Memorandum Opinion dated October 23, 2015 (ECF No. 49) and repeated herein for ease of reference.  *Osborne v.*

*Georgiades*, RDB-14-182, 2015 WL 6447503 (D. Md. Oct. 23, 2015), *aff'd,* 679 F. App'x 234 (4th Cir. 2017).[2]

Osborne and Pipitone are the parents of two minor children—a daughter ("JMLO"), aged five years at the time of the events in question, and a son ("CJP"), aged two years. Def.'s Mot. for Summ. J. Ex. 1, 3, ECF No. 42-3 (Children & Family Services Intake Worksheet). On November 1, 2010, Pipitone contacted the Harford County Child Advocacy Center to report the alleged sexual assault of JMLO. *See id.* Pipitone claimed that JMLO did not want to spend Halloween with her father, with whom JMLO allegedly "d[id] not have a good relationship." *Id.* JMLO purportedly told Pipitone that, several weeks prior, Osborne had "put his penis on her vagina" when she was asleep. *Id.*

The same day, White, a licensed social worker for the Harford County Child Advocacy Center, interviewed Pipitone.[3] Pipitone allegedly acted "in a manner that would cause [Corporal Georgiades and White] to be sympathetic to her and biased against" Plaintiff. Compl. ¶ 9, ECF No. 1. Following the meeting with Pipitone, White questioned JMLO regarding her mother's statements. Georgiades was not present, instead observing the interview from an adjoining room via a live video feed. White Dep. 29:9-20, ECF No. 42-5. Corporal Georgiades observed the interview for purposes of investigating the allegations. Pl.'s Resp. in Opp'n Ex. 3, 4:2-6, 6:24-7:4 (Circuit Court for Harford County, Maryland Motions Hearing Tr., June 21, 2011). Throughout the interview, Georgiades remained in telephone contact with White. Pl.'s Resp. in Opp'n Ex. 2, 32:11-33:12 (Circuit Court for Harford County, Maryland Motions Hearing Tr., June 20, 2011).[4] Corporal Georgiades and White spoke at least three times, *see id.* 32:9-33:25, but White stated that she did not recall the content of their conversations. Pl.'s Resp. in Opp'n Ex. 3, 29:13-20.

White employed the "Rapport, Anatomical Identification, Touch Inquiry, Abuse Scenario, Closure ("RATAC") method when questioning JMLO. White Dep. 24:21; 25:1-4. RATAC focuses on reducing any potential trauma to the child during the interview. Pl.'s Resp. in Opp'n Ex. 3, 12:5-8. In

---

[2] Citations are to exhibits accompanying the parties' briefs on defendant's first Motion for Summary Judgment (ECF No. 42), unless otherwise noted.

[3] White could not recall if Defendant Corporal Georgiades was present during this interview, although she stated that, "if the officer is present, [he] would sit in on the pre-interview." White Dep. 22:16-17, ECF No. 42-5.

[4] Plaintiff filed the exhibits accompanying his Response in paper, thus they are not available electronically.

response to White's interrogation, JMLO consistently denied that Osborne, or anyone, had touched her on parts of her body covered by a bathing suit. *Id.* 15:1-15. JMLO also denied that anyone had asked or forced her "to touch their privates with their penis," *id.* 15:13-20; that she had told her mother that someone attempted to touch her, *id.* 17:5-7; and that she had told her mother that "somebody put their penis in your private," *id.* 17:16-20. In total, JMLO denied abuse six different times. *Id.* 17:21-18:3.

Despite the repeated refutations, JMLO then changed course, describing instances in which Osborne "took his pants off and he got his penis and put it on [her] vagina and then he pressed it really bad and then it hurt." Def.'s Mot. for Summ. J. Ex. 3, 12, ECF No. 42-6 (JMLO Interview). JMLO also stated that Osborne had used his foot in the same manner. Pl.'s Resp. in Opp'n Ex. 3, 29:6-8. After this statement, Corporal Georgiades and White terminated the interview. *Id.* 29:21-30:8. Osborne claims that White, with Corporal Georgiades's guidance, constructed questions "that were unduly suggestive and leading in nature[,] . . . designed and intended to cajole the minor child into making up a story to support" Pipitone's accusations. Compl. ¶ 13.

After White completed her examination of the minor child, Pipitone called Osborne to accuse him of sexually assaulting their daughter. *See* Pl.'s Resp. in Opp'n Ex. 5 (Osborne-Pipitone Telephone Tr.) With Pipitone's consent, Corporal Georgiades listened in on the call to Plaintiff. Compl. ¶ 15. During the telephone conversation, Osborne consistently denied Pipitone's accusations. *See* Pl.'s Resp. in Opp'n Ex. 5.

Dr. Paul Lomonico ("Dr. Lomonico") examined JMLO on November 3, 2010 for evidence of sexual assault. Def.'s Mot. for Summ. J. Ex. 4, ECF No. 42-7 (Report of Dr. Lomonico); *see also* Pl.'s Resp. in Opp'n Ex. 6 (Report of Dr. Lomonico). The alleged assault occurred on October 16, 2010. *See id.* Dr. Lomonico found no physical evidence of sexual abuse, but noted that his findings "do[] not rule out abuse." *Id.* In contrast, White concluded that sexual abuse was "indicated." Def.'s Mot. for Summ. J. Ex. 5, 4, ECF No. 42-8 (Child Abuse Report).

On December 15, 2010, Corporal Georgiades met with Diane Tobin ("Tobin"), a Deputy State's Attorney for Harford County, Maryland. Tobin Aff., ECF No. 42-10. After reviewing the video of the JMLO interview, Tobin accepted the case for prosecution. *Id.* Corporal Georgiades attempted to contact Osborne, but was unsuccessful. Def.'s Mot. for Summ. J. Ex. 6, ECF No. 42-9 (Corporal Georgiades Supplemental Report). Corporal Georgiades then applied for an arrest warrant on January 24, 2011. Corporal Georgiades Dep. 60:7-12, ECF No. 42-11; Def.'s Mot. for Summ. J. Ex. 9, ECF No. 42-12

5

(Application for Statement of Charges). Corporal Georgiades's affidavit disclosed only JMLO's accusations of sexual abuse, and not her repeated refutations, nor the results of any medical examination. Def.'s Mot. for Summ. J. Ex. 9, at 3. An arrest warrant was issued and Plaintiff was arrested on the same day. Def.'s Mot. for Summ. J. Ex. 10, 4, ECF No. 42-13.

Osborne was charged with eight counts of sexual assault-based offenses. *See id.*, at 2-3 (Statement of Charges). On January 25, 2011, Osborne was detained in the Harford County Detention Center, with bail set for $500,000. Pl.'s Resp. in Opp'n Ex. 8 (Commitment Pending Hearing). A grand jury subsequently indicted Osborne on sixteen counts of sexual assault-related crimes. Def.'s Mot. for Summ. J. Ex. 11 (Commitment Pending Hearing, Indictment). Osborne was incarcerated without bond for over eight months, until October 3, 2011, after which date a bond was set for $25,000. Osborne Dep. 46:8-9, ECF No. 42-15. Finally, the Office of the State's Attorney for Harford County declined to prosecute Osborne on December 13, 2011, instead placing his case on the inactive "stet" docket. Osborne Dep. 37:8-21.

(ECF No. 49 at 2-6.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

6

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs*, 780 F.3d at 569 (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## DISCUSSION

Defendant Georgiades raises four broad arguments in support of his now-pending Motion. First, he argues that plaintiff's claims, which essentially are claims for malicious prosecution, must fail because plaintiff is unable to prove that the criminal case terminated in his favor, an essential element of a malicious prosecution claim. (ECF No. 71-1 at 5-9.) Second, Georgiades asserts that he is entitled to qualified immunity because a reasonable judicial officer would have found probable cause for Osborne's arrest. (*Id.* at 10-13.) Third, he argues that the Assistant State's Attorney's decision to prosecute Osborne before Georgiades applied for the arrest warrant severed the causal link between any error on his part and plaintiff's injuries. (*Id.* at 13-15.) Relatedly, Georgiades argues that the grand jury's indictment severed the causal link between any error and plaintiff's injuries. (*Id.*) Finally, Georgiades asserts that no reasonable jury could find that Georgiades' involvement in the

7

interview of JMLO amounts to fabrication of evidence. (*Id.* at 15-19.) These arguments are addressed in turn below.

> I. **Plaintiff is Unable to Establish that the Underlying Criminal Proceedings Terminated in His Favor, an Essential Element of His § 1983 Malicious Prosecution Claim[5]**

Defendant argues that because the criminal proceedings against Osborne resulted in the charges being placed on the "stet" docket, he is unable to prove that the proceedings terminated in his favor—as required to prevail on his § 1983 malicious prosecution claim. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996); *Snider v. Seung Lee*, 584 F.3d 193 (4th Cir. 2009). (ECF No. 71-1 at 5-6.) Defendant cites a series of Maryland and federal cases for the proposition that a "stet" outcome does not constitute a "termination in the defendant's favor." *See Williams v. Prince George's County*, 157 F.Supp.2d 596 (D. Md. 2001); *State v. Meade*, 101 Md. App. 512 (1994); *Gilmer v. State*, 389 Md. 656, 676 (2005) ("a stet permits an accused to be proceeded against at a later date under the same charging document" and "is a mere suspension of the charges" without "the finality of a dismissal or acquittal."). *See also* Md. R. Crim. Proc. 4-248 ("On motion of the State's Attorney, the court may <u>indefinitely</u> <u>postpone</u> <u>trial</u> of a charge by marking the charge "stet" on the docket.") (emphasis added).

While Osborne concedes that the "stet" does not constitute a termination in his favor, he argues that defendant's reliance on this element of malicious prosecution claims "completely misses the point," as plaintiff's injuries were the "result of Georgiades'

---

[5] This is the first time that this argument has been presented to this Court. As defense counsel recognized during the September 6 motions hearing, this argument was not raised in defendant's first Motion for Summary Judgment, was not discussed in this Court's Memorandum Opinion thereon, and was not addressed in the Fourth Circuit's majority opinion.

fabrication of evidence."[6] (ECF No. 72 at 6.) Specifically, he asserts that the **fabrication of evidence** claim is based on his substantive due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000).

Plaintiff's claim based on the alleged unreasonable seizure must fail because he is unable to show that the criminal prosecution terminated in his favor. As the Fourth Circuit explained in *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009):

> "While it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, *see Albright v. Oliver*, 510 U.S. 266, 279-80 n.5, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (Ginsburg, J., concurring); *Lambert v. Williams*, 223 F.3d 257, 261-62 (4th Cir. 2000), if there is such a right, **the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure**. In *Lambert* we explained:
>
>> Our analysis in *Brooks [v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)]*, understood in light of these precedents, makes clear that there is no such thing as a '§ 1983 malicious prosecution' claim. What we termed a 'malicious prosecution' claim in *Brooks* is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution --specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.
>
> 223 F.3d at 262. In a footnote, we explained the significance of the second element of a malicious prosecution claim:
>
>> As we noted in *Brooks*, the significance of the favorable termination element is not only that ***it constitutes a prerequisite for recovery***, but also that it establishes the time

---

[6] In addition, during the September 6 hearing, Osborne asserted that the subsequent expungement of the charges from his public criminal record could be interpreted as a termination of the charges in his favor. However, the only authority cited by Osborne in support of this position, Maryland Rule of Criminal Procedure § 10-105, does not support such a finding.

> from which the claim accrues for purposes of determining whether the statute of limitations has run.

*Snider*, 584 F.3d at 199 (italics in original) (bold added). To the extent that plaintiff's claim rests on defendant's knowingly omitting relevant facts in his arrest warrant application—that is, maliciously prosecuting him—plaintiff's claims must fail.

As noted above, plaintiff seeks to avoid this outcome by asserting a separate, substantive due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005). Plaintiff relies on the United States Court of Appeals for the Third Circuit's decision in *Halsey v. Pfeiffer*, 750 F.3d 273, 279 (3d Cir. 2014), where that Court stated that: "When falsified evidence is used as a basis to initiate the prosecution of a defendant, or is used to convict him, the defendant has been injured regardless of whether the totality of the evidence, excluding the fabricated evidence, would have given the state actor a probable cause defense in a malicious prosecution action that a defendant later brought against him."

While the Fourth Circuit has recognized that fabrication of evidence *can* lead to a due process claim, the plaintiff must also establish that his loss of liberty resulted from the fabrication. *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014) ("Fabrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty — i.e., his conviction and subsequent incarceration — resulted from the fabrication."). Notably, both *Massey* and *Wilmore* dealt with fabrication of evidence that led to criminal convictions—not merely pretrial detention.

Plaintiff's assertion of a due process right fails, however, for the reasons stated in *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). In that case, the Fourth Circuit stated that:

> **"The Due Process Clause does not constitute a catch-all provision that provides a remedy whenever a state actor causes harm.** *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Rather, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion) (internal quotation marks omitted); *see also id.* at 286–91, 114 S.Ct. 807 (Souter, J., concurring). **Because the Fourth Amendment provides "an explicit textual source" for § 1983 malicious prosecution claims, the Fourteenth Amendment provides no alternative basis for those claims.'"**

*Chalmers*, 703 F.3d at 647 (emphasis added). *See also Nero v. Mosby*, 233 F. Supp. 3d 463, 482 (D. Md. 2017) ("A 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment [not a Fourteenth Amendment] claim for unreasonable seizure which incorporates certain elements of the common law tort.") (citing *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)).

The holding in *Chalmers* is consistent with the recent decision of the United States Supreme Court in *Manuel v. City of Joliet, Ill.*, in which the Court rejected the plaintiff's attempt to frame his complaint based on unlawful pretrial detention within the context of a Fourteenth Amendment due process claim. 137 S. Ct. 911, 918–19 (2017). The Court there stated that, "[i]f the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Id.* As Osborne similarly alleges that the legal process against him—that is,

the arrest warrant application prepared by Georgiades—was unsupported by probable cause, his claims lie within the Fourth Amendment only.

In sum, plaintiff's attempt to frame his claims within the context of the Fourteenth Amendment is unavailing and does not excuse his inability to prove an essential element of his § 1983 malicious prosecution claim. Accordingly, Georgiades is entitled to summary judgment.

## II. Georgiades is Entitled to Qualified Immunity Because a Reasonable Judicial Officer Would Have Found Probable Cause for Osborne's Arrest

Defendant re-asserts his entitlement to qualified immunity, notwithstanding the prior judgments of this Court and the Fourth Circuit. (ECF No. 71-1 at 10-12.) Specifically, he argues that "no reasonable officer in [Corporal] Georgiades's place would have *known* that the application for a statement of charges and arrest warrant failed to establish probable cause" because "the prosecutor had reviewed the evidence available, including the entire video of the child's interview and the inconclusive medical report, and told [Corporal] Georgiades *she was accepting the case for prosecution*." (*Id.* at 10) (emphasis in original.) He further asserts that there is no evidence that he "lied to or misled the prosecutor, failed to disclose exculpatory evidence to the prosecutor, or unduly pressured the prosecutor to seek the indictment." *Evans v. Chalmers*, 703 F.3d 636 at 648 (4th Cir. 2012).

Plaintiff argues in opposition that this Court and the Fourth Circuit have previously rejected Georgiades' assertion of qualified immunity and, moreover, that whatever Georgiades may have presented to Deputy State's Attorney Tobin, he did not include all of the facts in his arrest warrant application. (ECF No. 72 at 7-8.)

Qualified immunity affords government officers protection from suits for monetary damages when the officers have acted in good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This brand of immunity is "an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow*, 457 U.S. at 818.

Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, law enforcement officers "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful will be entitled to immunity from suit." *Henry v. Purcell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 781 (2011); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

Qualified immunity shields government officials from § 1983 claims unless two conditions are satisfied: first, the alleged facts, "[t]aken in the light most favorable to the party asserting the injury, … show the officer's conduct violated a constitutional right[;]" and second, "whether the right asserted was clearly established at the time of the events at issue." *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 626-27 (4th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001)); *accord Occupy Columbia*, 738 F.3d at 118.

To overcome Georgiades' qualified immunity, Osborne must satisfy the two-prong standard set forth in *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674 (1978), which requires him to show that (1) Georgiades omissions were deliberate or with reckless disregard for the truth and (2) that the omissions were material.

On the initial appeal, the Fourth Circuit did <u>not</u> address the intent prong of the *Franks* test or this Court's prior holding that "a reasonable jury could conclude that Georgiades's warrant application contained omissions made deliberately or with reckless disregard for any misleading effect." *Osborne v. Georgiades*, 679 Fed. App'x. 234, 238 (4th Cir. Feb. 8, 2017). The majority held that Osborne had waived this issue on appeal.

This Court's prior decision on the matter of qualified immunity focused on the content of the arrest warrant application completed by Georgiades and did not accord proper consideration to certain facts which have been more clearly presented in the pending Motion. Specifically, this Court's prior Memorandum Opinion did not address the fact that Deputy State's Attorney Diane Tobin accepted the case for prosecution *before* Corporal Georgiades applied for the arrest warrant of Osborne. (ECF No. 71-2 at ¶¶ 7-8.) Tobin had seen the video of the interview with JMLO, was aware of the girl's initial denials of sexual abuse, was aware of the findings of the medical examiner, and nevertheless found that there was probable cause to arrest Osborne. As she informed Georgiades that she was accepting the case for prosecution before he applied for the warrant, it cannot be said that Georgiades acted with deliberate or reckless disregard for the truth in completing his application for the arrest warrant. As Osborne has not presented any evidence to the contrary on the matter of

14

Georgiades' intent, Georgiades is entitled to qualified immunity and, on this alternative basis, summary judgment on Osborne's claims.[7]

### III. Plaintiff is Unable to Show that Georgiades Was the "But-for" Cause of His Injuries[8]

The Fourth Circuit explained in *Chalmers* that "subsequent acts of independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure. Such 'intervening acts of other participants in the criminal justice system' insulate a police officer from liability." *Chalmers*, 703 F.3d at 647-48 (internal citation omitted) (citing *Zahrey v. Coffey*, 221 F.3d 342, 351 (2d Cir. 2000)).

In support of his Motion, defendant argues that "[w]here an investigative official presents all pertinent probable cause evidence to an intermediary, such as the prosecutor [], 'the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution.'" (ECF No. 71-1 at 13-14) (citing *Gregg v. Richmond*, DKC-01-1212, 2004 WL 257080 (D. Md. Feb. 11, 2004)). Here, the undisputed evidence before this Court indicates that Georgiades presented all of the evidence to Deputy State's Attorney Tobin, who made the decision to prosecute Osborne

---

[7] While the Fourth Circuit noted that this Court applied the incorrect materiality standard under *Franks*, it nonetheless affirmed this Court's holding that the "corrected" warrant affidavit would defeat probable cause. *Osborne v. Georgiades*, 679 Fed. App'x. at 239. As this Court's ruling that Georgiades' is entitled to qualified immunity under the intent prong of the *Franks* test, it need not revisit its prior holding or that of the Fourth Circuit on the materiality prong.

[8] This argument was not raised in defendant's first Motion for Summary Judgment.

15

and to present the evidence to a grand jury, which returned an indictment. Thus, Georgiades asserts, he cannot be said to be a "but-for" cause of Osborne's injuries.

Plaintiff asserts in opposition that Georgiades was not fully forthcoming with Tobin, failing to disclose to her (1) Osborne's willingness to make a statement if his lawyer were present and (2) Osborne's willingness to take a polygraph exam if Pipitone also would take an exam. (ECF No. 72 at 9-10.) Plaintiff does not dispute that the law requires but-for causation.

Plaintiff's reliance on such speculative and hearsay assertions is unavailing in opposing a motion for summary judgment. *See M-Edge Accessories LLC v. Amazon.com Inc.*, MJG-11-3332, 2015 WL 403164, at *7 (D. Md. Jan. 29, 2015) (citing *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro,* 64 F.3d 962, 967 (4th Cir. 1995)). Moreover, even if these alleged statements by Osborne were admissible, there is no evidence that they would have changed Deputy State's Attorney Tobin's determination to prosecute the case and present the case to a grand jury. That is, the statements were simply not material under *Franks*. Thus, absent any other evidence that Georgiades lied to or misled the prosecutor, he is entitled to summary judgment because he was not the "but-for" cause of plaintiff's injuries.

### IV. Osborne Fails to Produce Evidence That Georgiades' Involvement in the Interview of JMLO Amounts to Fabrication of Evidence[9]

Defendant argues that plaintiff has produced no evidence that Georgiades fabricated any evidence by posing improper questions or exerting pressure on JMLO or Social Worker White during the interview of JMLO. (ECF No. 71-1 at 16-17.) Georgiades also offers the

---

[9] This argument was not raised in defendant's first Motion for Summary Judgment.

expert testimony of Samantha Kanekuni, who has stated that "while 9 of the 143 questions asked of [JMLO] were leading, all those questions case *before* Ms. White spoke to [Corporal] Georgiades," and, therefore, that it does not appear that his instructions to White produced JMLO's account of abuse.  (*Id.*)

Plaintiff does not respond to this argument, but relies only on this Court's prior holding that "given JMLO's denials of abuse and the results of her physical exam, a reasonable jury could certainly conclude that Corporal Georgiades exerted pressure that resulted in the fabrication of evidence against plaintiff." (ECF No. 72 at 10.) During the September 6 hearing, plaintiff further argued that Georgiades' decision to terminate the interview also constituted a fabrication of evidence.

Plaintiff fails to explain how any omissions in the arrest warrant application constitute the "fabrication of evidence." The only alleged fabrication relates to possibly improper questions/pressure on White during her interview of JMLO. However, the undisputed facts before this Court are that White does not recall her conversations with Georgiades, the interview transcript does not reveal any improper questions, and Georgiades' expert Kanekuni states that the timing of even the leading questions undermines any claim that Georgiades improperly influenced the interview of JMLO.

Similarly unavailing is plaintiff's argument that Georgiades' allegedly premature termination of the interview with JMLO amounts to fabrication. While this position posits that had the interview continued, JMLO might have recanted or might have undermined her own credibility in some way, it ultimately rests on mere speculation and, therefore, is

17

insufficient to avoid summary judgment.[10]  Thus, as plaintiff is unable to adduce any evidence whatsoever of Georgiades' fabrication of evidence, Georgiades would also be entitled to summary judgment on this basis.

## CONCLUSION

For the reasons stated above, defendant Corporal Peter Georgiades's Motion for Summary Judgment (ECF No. 42) is GRANTED, and summary judgment shall be ENTERED in his favor.

A separate Order follows.


Dated: September 11, 2017         \_\_\_\_\_/s/_____
                                  Richard D. Bennett
                                  United States District Judge

---

[10] Moreover, it is impossible to say whether continuing the interview would have produced exculpatory material, as Osborne now suggests, or, on the other hand, additional evidence of criminal liability on the part of Osborne.